[Civ. No. 1821.    Third Appellate District.—June 5, 1919.]

## McKISSICK CATTLE COMPANY (a Corporation), Respondent, v. BAPTISTA ALSAGA, Appellant.

[1] WATERS AND WATER RIGHTS—RIGHT TO WATERS OF CREEK—APPROPRIATION—FINDING—EVIDENCE.—In this action to enjoin the defendant from maintaining on certain of the plaintiff's lands a dam and a ditch, whereby water was diverted from a given creek to the lands of the defendant, the finding of the trial court that the plaintiff for more than twenty years prior to the commencement of this action had continuously and uninterruptedly used, by virtue of rights acquired as an appropriator, until interfered with by defendant, all the waters of such creek for a stated beneficial purpose and that all of said waters were necessary for that purpose, is supported by the evidence.

[2] ID.—RIGHTS OF RIPARIAN OWNERS.—If a person be a riparian owner or his lands are riparian to a flowing or any stream, he is, *ex necessitate*, entitled to exercise riparian rights, unless he has by his own acts divested himself of such rights or otherwise suffered the loss of them.

[3] ID.—EFFECT OF CHANGE OF CHANNEL.—When, solely by an act of Providence, the channel of riparian waters has been so changed as that such waters cease to flow over and across the lands of a riparian owner, the owner of such lands loses the role of a riparian owner.

[4] ID.—LOSS OF RIPARIAN RIGHTS BY AVULSION—RIGHT TO RESTORE WATERS TO ORIGINAL CHANNEL.—While a riparian owner, having lost his rights as such by avulsion, may ditch the water back to its original channel if he does not delay doing so beyond a reasonable time, in restoring the water to its original channel, he will not be permitted to disturb the rights of appropriators, nor has he the right to go upon the lands of others, without their consent or acquiescence, and build thereon dams and ditches, or either, whereby he may restore the lost waters to their original bed.

APPEAL from a judgment of the Superior Court of Lassen County.    H. D. Burroughs, Judge.    Affirmed.

The facts are stated in the opinion of the court.

---

3. What is riparian land, note, 11 L. R. A. (N. S.) 1062.

4. Right of riparian owner to restore stream which has changed its course by natural causes to old channel, notes, L. R. A. 1916F, 407; 33 L. R. A. (N. S.) 804.

F. A. Kelley for Appellant.

Dodge & Barry for Respondent.

Pardee & Pardee, *Amicus Curiae.*

HART, J.—This action was instituted by the plaintiff to enjoin the defendant from maintaining on certain of the plaintiff's lands a dam and a ditch, whereby water is diverted from Secret Creek to the lands of the defendant.

Findings and judgment were in favor of the plaintiff, and this appeal is prosecuted by the defendant from said judgment.

The plaintiff claims the exclusive right to all the waters flowing in said creek, both as a riparian owner and as an appropriator, and sets up both those claims in two different causes of action. The defendant, besides specifically denying by answer all the material facts alleged in the complaint, filed a cross-complaint, in which he sets up a claim to fifty inches of the water of the creek, measured under a four-inch pressure, by virtue of appropriation and also by prescription.

The facts, as disclosed by the findings, are these: The plaintiff is the owner of a little more than a quarter-section of land in township 26 and a number of other quarter-sections in township 32, in Lassen County, and has been the owner of said lands for many years. The waters of Secret Creek, above mentioned, in a well-defined channel, between well-defined banks, flow over and across said lands, the latter being, therefore, riparian thereto and susceptible of irrigation from the waters thereof. All the waters of said stream are necessary for the irrigation of said lands for the purpose of growing crops thereon.

More than twenty-five years prior to the commencement of this action a grantor of plaintiff appropriated all of the waters of said stream by constructing dams in the channel thereof at various places in and upon said stream and constructing ditches leading from said dams to and upon said lands, and for more than twenty-five years prior to the institution of this action the plaintiff and its said grantor have appropriated and diverted, by the means above indicated, all of the waters of said stream and, except when

interfered with by defendant, have continuously used said waters for the irrigation of crops of hay and grasses for pasture standing and growing on said lands; that, inasmuch as the climate of that section of the state in which said lands are situated is arid, it is absolutely necessary and, in fact, indispensable to the growing of hay and grasses on the lands of plaintiff to irrigate the same, and that properly to irrigate said lands, or so that they will produce crops of hay and grasses, it is necessary for plaintiff to use all of the waters of said stream.

The defendant is, and for more than ten years prior to the beginning of this action had been, the owner and in the possession of fractional portions of certain sections, in quantity amounting in the aggregate to a quarter-section, in said township 32. Over a corner of the said lands of the defendant the creek above mentioned traversed, and the said lands, although (as the court found) riparian to said creek, are not susceptible of irrigation from the waters of said creek without the necessity of going upon the lands of plaintiff for the purpose of diverting the waters from the stream to the lands of defendant by the construction and maintenance of a dam on plaintiff's lands and constructing and maintaining a ditch leading from such dam to defendant's lands.

As above stated, the defendant in his cross-complaint claimed title to fifty inches of the waters of the creek by appropriation and prescription, and in this behalf alleged that in the year 1894 one Edward W. Tregaski, a grantor of defendant, at a time when said Tregaski was the owner of defendant's lands, constructed a ditch at a certain point on plaintiff's land connecting with Secret Creek and leading to defendant's lands, and thereby appropriated and diverted to the latter lands fifty inches of the waters of said stream "for a useful and beneficial purpose"; that at the time of the appropriation so made such waters were unappropriated and unclaimed waters flowing in said stream, and that said appropriation was made "peaceably, quietly, and without objection or interference by the owners of said lands upon which said diversion was made"; that ever since the time of said diversion, in the year 1894, the defendant's said grantor and the defendant have continuously, in each and every year thereafter and until the year 1915, appropriated, diverted, and used fifty inches of said waters, meas-

ured under a four-inch pressure, for the necessary irrigation of crops of hay, grain, and grasses growing upon defendant's lands. It is then averred that in the month of April, 1915, the plaintiff willfully, wrongfully, and without right and against the consent of defendant, constructed a dam in said creek at the point where the ditch leading to defendant's land tapped said creek, and by means thereof and a ditch constructed by said plaintiff turned the waters of said stream away from the defendant's lands on to the lands of plaintiff, thereby depriving defendant of any use of the waters of said creek, etc.

As to the above allegations of defendant's cross-complaint, the court, after finding that said Tregaski did not in the year 1894, or at any other time, build the ditch referred to or otherwise make an appropriation of any of the waters of said stream to be used on defendant's lands or for any purpose, further found:

"That prior to the winter of 1913 and 1914, there was an ancient channel heading upon the lands of plaintiff, lying on said stream above the lands of defendant, and that said ancient channel caught up the waste waters from the said lands of plaintiff so lying above on said stream, as aforesaid, and said Tregaski did construct a ditch from said ancient channel to and upon defendant's said lands, and said Tregaski and said defendant down to the winter of said years 1913 and 1914, used the waters of said ancient channel and ditch as the same wasted or flowed from the said lands of plaintiff, situated on said stream above said lands of defendant, that, in the winter of the years 1913 and 1914, the natural channel of said stream, by reason of unusual flood or freshet, washed out to such an extent that no water would or could flow from said stream to the lands of defendant, or to the head of said ancient channel, except by defendant constructing a ditch over the lands of plaintiff on said stream, and above the lands of defendant, and constructing a dam in the channel of said stream on the lands of plaintiff in the channel of said stream above the said lands of defendant.

"That in the year 1914, after said flood or freshet, defendant, for the purpose of causing the water of said stream to flow into said ancient channel, willfully and unlawfully, and without right, and without the consent of plaintiff, entered

upon the west half of the northeast quarter of said section 26, township and range aforesaid, and erected a new dam in the channel of said stream and constructed a new ditch leading from said dam upon and across a portion of the said west half of the northeast quarter of section 26, and to lands occupied and claimed by defendant lying west of said lands, and said defendant now claims the right to maintain said dam in the channel of said stream, and to maintain said ditch and take water therethrough across a portion of the said lands of plaintiff, to and upon lands so claimed and occupied by defendant.''

It was further found that the defendant ''has no right to maintain said dam in the channel of said stream or said ditch across said lands.''

The findings further show that in the month of April, 1915, plaintiff, in the manner charged and described in defendant's cross-complaint, stopped the flow of the waters from the creek into the ditch leading to defendant's lands, but it was found that the act of the plaintiff in that respect was not unlawful or wrongful.

Neither the defendant nor his grantors (so it was found) ''have ever diverted fifty inches of water, or any number of inches of water whatever, from said stream for any length of time whatever, openly, notoriously, continuously, or adversely to the plaintiff or its grantors, or either of them, or under any claim of right and title against said plaintiff, and that neither defendant nor his grantors have ever appropriated and diverted, or used and appropriated and diverted, or used and appropriated the waters of said stream, or any portion thereof, openly, notoriously, continuously, or adversely to the plaintiff or its grantors, or either of them.''

The appellant contends: 1. That the findings are not supported, and, 2. That certain findings are so irreconcilably inconsistent with each other that the incongruity is fatal to the judgment.

We do not intend, nor is it necessary, to present herein a detailed or an extended statement of the testimony to show that the first point above stated is wholly destitute of merit. It will suffice to state that there is disclosed by the record ample evidence to show that, since the year 1895 and down to the time in 1914 when the defendant constructed the

ditch on the plaintiff's land to carry water from the creek to his land, the plaintiff had continuously and uninterruptedly used for the purpose of irrigating its lands all the waters of Secret Creek, and that all the waters flowing in the creek were necessary for that purpose. Indeed, it was sufficiently made to appear that there was not enough water flowing in said creek to provide properly or adequately for the crops grown on all the plaintiff's lands. It was further shown by what appears to be sufficient proof that none but waste waters from the creek ever did reach the defendant's land, and this waste water was small in quantity and came from the irrigation by plaintiff of that portion of its lands known as the "upper meadow"; that the waste water referred to ran into what the court in its findings characterizes as an "ancient channel." Said channel, it seems, was an old slough which had ceased to carry water; that the use of the waste water emptying into said channel or slough as the result of the irrigation of plaintiff's "upper meadow" was accomplished by the defendant's grantor, said Tregaski, by a ditch connecting with said slough; that the use in such manner of said waste water was continued by the defendant's grantor and himself until the rainy season of 1913–14, when, as seen, the channel of Secret Creek was so washed out by a freshet as to render it incapable of carrying its water so that it would empty the waste waters into the old slough.

In addition to the foregoing, it may be stated that certain witnesses testified that in certain years prior to that in which the defendant constructed the ditch in controversy, they had worked on the land owned by the defendant and that they knew that no water from Secret Creek, except the waste above referred to, was ever used on said land. It may also be added that it appears that, just prior to the construction by the defendant of the ditch in question, the latter stated to the witness Enyart, who was foreman or superintendent of the plaintiff and as such had charge of its lands and stock business, that he (defendant) desired the use of the water of the creek for the period of ten or twelve days only; that Enyart replied to the defendant: "I can't let you have it—it would be against the company's wishes, and I can't do it; I said, 'You can write out an agreement and pay me a dollar,'" whereupon a written agreement or

41 Cal. App.—25

promise was prepared and signed by defendant and delivered to Enyart, in which he promised "to pay the McKissick Cattle Co. one dollar for the water for my rye-field for 12 days." In this connection it may be well to state that Enyart testified that the defendant, at the time of making said agreement, made no claim whatever to the water flowing in Secret Creek, nor, from the time he (witness) first entered into the employment of plaintiff, in the year 1895, to the "present time," did anyone living on or occupying "the Tregaski place, or Alsaga land" make "any claim [to witness] of any right to use the waters of the creek, except in the last couple of years," when the witness discovered the ditch complained of.

The testimony further shows that the plaintiff has utilized the waters of the stream for its purposes by putting dams therein and building small ditches on its lands, and that there is no way in which the defendant can divert the water from the creek to his lands except by doing what he did in the year 1914, *viz*, by maintaining a dam in the channel of the creek in the meadow field of plaintiff and a ditch leading from the dam to the defendant's land.

There is ample testimony from which the trial court was authorized to find that the ditch in question was constructed by the defendant in the year 1914.

[1] It is clear from the foregoing statement of the evidence that (as above declared) the finding that the plaintiff for more than twenty years prior to the commencement of this action had continuously and uninterruptedly used, by virtue of rights acquired as an appropriator, until interfered with by defendant, as above explained, all the waters of Secret Creek for a beneficial purpose and that all said waters were necessary for such purpose, is supported.

The claim that there is a fatal inconsistency between certain of the findings is based upon the fact that, while, as above shown, the court found that the plaintiff was entitled to take and use all the waters of said creek, it also found that the lands of the defendant were *riparian* to said stream.

It must be conceded that the idea that a person may be a riparian owner and at the same time not entitled to exercise the rights which are the necessary corollary of such ownership is inherently inconsistent. [2] If he be a

riparian owner or his lands are riparian to a flowing or any stream, he is, *ex necessitate*, entitled to exercise riparian rights, unless he has by his own acts divested himself of such rights or otherwise suffered the loss of them. It is probable, however, that what the court meant to declare by said finding was merely that the lands of defendant were riparian to the creek so long as water flowed therein so as to reach that part of the creek passing over said lands.

But assuming that the cross-complaint of defendant sufficiently shows by its averments that defendant's lands were ever riparian to the creek in question (an assumption directly opposed to the contention of counsel for plaintiff), we still have here this situation: The evidence shows, the court finds, and the defendant expressly admits in his briefs that, in the winter of 1913–14, the natural channel of said creek was, from natural causes, so changed as that the waters thereof no longer thereafter flowed to defendant's lands, the same being caused by a flood or freshet which washed out the natural channel to such an extent and in such manner as that it brought about the results indicated. And the defendant further admitted (and the court found upon evidence sufficient in itself, and independently of such admission, to warrant the finding) that the defendant could not restore the water without ditching the water from the creek at a point upon the plaintiff's lands. In other words, it was not only found by the court but it was admitted by the defendant that he cannot secure a return of the water into the channel of the creek so that it will reach his lands without using the plaintiff's lands for that purpose. [3] It follows, therefore, that, even if it be true that defendant's lands were formerly riparian to the waters of Secret Creek, the finding that they were riparian to said waters at the time of the commencement of this action is entirely devoid of any justification whatsoever; for, when, solely by an act of Providence, the channel of riparian waters has been so changed as that such waters cease to flow over and across the lands of a riparian owner—that is to say, when such waters cease through the operation of some natural force to pursue their accustomed course and in consequence cease to flow in a portion of that natural channel, which portion of such channel passes or crosses over certain lands—then in that case the owner of such lands

loses the role of a riparian owner. Or, as this proposition is learnedly and lucidly explained by former Justice Henshaw, in *Wholey* v. *Caldwell,* 108 Cal. 95, [49 Am. St. Rep. 64, 30 L. R. A. 820, 41 Pac. 31] : "The foundation of the riparian proprietor's rights rests upon the universally accepted maxim adopted by the common law from the civil law: *Aqua currit, et debet currere ut currere solebat ex jure naturae.* These rights thus draw their support from the laws of nature, but they do not rise superior to those laws. When, by their operation, the flow is lost the right is lost with it. The new channel itself becomes the natural channel. Otherwise a riparian proprietor would hold all lands above him in an extraordinary and perpetual servitude. If, by the forces of nature, the stream should change its course at a point miles above him, he would still be empowered to subject any and all of the intermediate territory to operations requisite to enable him to turn the water back upon his own premises, and this power would be his to the very fountain-head of the stream. Such a doctrine could not be tolerated."

The doctrine thus declared is so obviously the product of sound principle and sound sense that it would be wholly supererogatory to multiply authorities expounding and upholding it, although for the convenience of the profession, we may with no impropriety refer to the following authorities in this connection: Hale's (Sir Matthew) De Juro Maris, c. 1; Kent's Commentaries, 428; Blackstone's Commentaries, 262; Angell on Watercourses, sec. 57; Gould on Waters, sec. 159, and cases mentioned thereunder; 1 Wiel on Water Rights, sec. 862.

[4] Without doubt a riparian owner, having lost his rights as such by avulsion, may ditch the water back to its original channel if he does not delay doing so beyond a reasonable time. (1 Wiel on Water Rights, sec. 862; *Morton* v. *Oregon Short Line Ry. Co.,* 48 Or. 444, [120 Am. St. Rep. 827, 7 L. R. A. (N. S.) 344, 87 Pac. 151, 152, 153]; *Mathewson* v. *Hoffman,* 77 Mich, 420, [6 L. R. A. 349, 43 N. W. 879]; Farnham on Waters, sec. 491.) But in restoring the water to its original channel, he will not be permitted to disturb the rights of appropriators, nor has he the right to go upon the lands of others, without their consent or acquiescence, and build thereon dams and ditches, cr either, whereby he may restore the lost waters to their

original bed. The defendant in this case entered upon the
lands of the plaintiff and constructed the ditch complained
of without the consent of the latter, and, as in no other way
can he bring back to the portion of the channel of Secret
Creek passing over and across a corner of his lands the
waters which had theretofore flowed therein, he stands as
one who has lost his riparian rights with respect to the
creek in question.

The result of the foregoing considerations is, as above
stated, that the finding that defendant's lands are riparian
to Secret Creek is wholly out of place in the judgment-roll
and is to be disregarded. The judgment is amply sup-
ported by the other findings.

It is next contended that there is no evidence supporting
the finding of "an ancient channel heading upon the lands
of plaintiff, lying on said stream above the lands of de-
fendant and into which flowed the waste waters from plain-
tiff's lands," and that defendant's grantor, Tregaski, main-
tained a ditch from said "ancient channel to and upon
defendant's said lands," by means whereof he utilized for
the benefit of said lands the waste waters from plaintiff's
lands. The specific objection to said finding is that there
is no evidence of the existence of an "ancient channel."
The witness Enyart testified that "Alsaga takes the water
out in a ditch above the deep channel in the upper field;
his ditch runs into an *old slough;* that is, the waste water
from the irrigation of the upper meadow, and that was all
of the water that was used on the Tregaski place at that
time," referring to the time intervening between the years
1896 and 1900.

It is doubtless true that the "ancient channel" found by
the court to exist is the "old slough" mentioned by the
witness Enyart. Counsel for defendant undertake to dif-
ferentiate an "old slough" from an "ancient channel,"
declaring that, while a slough is "an inlet from a river
or a wet and marshy place" (Webster's Dictionary), "an
ancient channel no longer holds or carries water." The dis-
tinction is verbal rather than real. The word "channel" is,
as we understand it, a generic term, and applies to any
watercourse, whether a river, a creek, a slough, or a canal.
If the phrase "an ancient channel" means an abandoned
watercourse, we can see no reason why the phrase "old

slough" should not imply the same thing, if it be true that water once flowing in it has ceased permanently so to flow. But the discussion is academic and without importance, since the finding that the defendant had never used any but the waste waters flowing from the plaintiff's lands after the irrigation thereof from Secret Creek is alone sufficient, it being immaterial in what manner such waters reached the defendant's lands, whether by means of an "old slough," an "ancient channel," or an artificial waterway.

There is no just reason presented for disturbing the judgment, and it is, therefore, affirmed.

Chipman, P. J., and Burnett, J., concurred.